**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

FILED BY _____ AP _____ D.C.

**Jan 27, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

January 27, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  20-10780-AA
Case Style: Tabitha Baker v. Bank of America, N.A.
District Court Docket No: 9:19-cv-80782-RLR
Secondary Case Number: 9:18-bk-16061-MAM

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
### For the Eleventh Circuit

_____

No. 20-10780

_____

District Court Docket No. 9:19-cv-80782-RLR
Bkcy No. 9:18-bk-16061-MAM

In re: TABITHA BAKER,

                              Debtor.

_____

TABITHA BAKER,

                              Plaintiff - Appellant,

versus

BANK OF AMERICA, N.A.,

                              Defendant - Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: December 29, 2020
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[DO NOT PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 20-10780
Non-Argument Calendar

_____

D.C. Docket No. 9:19-cv-80782-RLR
Bkcy No. 9:18-bk-16061-MAM

TABITHA BAKER,

Plaintiff-Appellant,

versus

BANK OF AMERICA, N.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 29, 2020)

Before WILSON, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

When Tabitha Baker fell behind on her home mortgage payments, Baker's creditors scheduled multiple foreclosure sales. Each scheduled sale was thwarted by a last-minute bankruptcy filing. Despite a fifth bankruptcy filing on the eve of a scheduled foreclosure sale—which entitled Baker to an automatic stay from the foreclosure proceeding—Bank of American N.A. ("BANA") executed the sale. Baker then sued BANA and the winning bidder for violating the automatic stay. So, BANA sought retroactive and prospective relief from the stay in the bankruptcy court. The bankruptcy court granted BANA's requested relief because it found that the numerous bankruptcy filings were part of a scheme to delay the foreclosure sale. The district court affirmed. Baker appeals, arguing that the bankruptcy court erred for numerous reasons. We affirm because the bankruptcy court did not abuse its discretion in reopening the case and granting BANA's requested relief.

## I.     Background

Because we write primarily for the parties, we describe only those facts necessary to address the issues raised in this appeal.

On April 28, 2005, Tabitha Baker[1] executed and delivered a promissory note for $392,000 to Countrywide Home Loans, Inc. ("Countrywide") to finance her

---

[1] For an unknown period, Baker's last name was Cote. For clarity's sake, we will refer to her throughout this opinion as Baker.

2

purchase of a home in Fulton County, Georgia (the "Property"). The loan was secured by a mortgage deed. On February 5, 2008, Baker executed and delivered a loan modification agreement to Countrywide. Baker ceased making payments after October 7, 2008.

Between 2006 and 2017, the Property was transferred by a quit claim deed on five occasions. The Property was transferred between and among Baker, Michael Bourf, Mark Schecklenburg, the Four Square Foundation, and the Bayshore Company. Baker retained an interest in the Property after the first two transfers, and she received complete ownership again after the fifth transfer.

Beginning in 2012, there were five bankruptcy filings associated with the Property. Baker first filed for Chapter 13 bankruptcy[2] in July 2012, but her case was dismissed because she failed to attend the meeting of creditors or file the necessary paperwork. From 2015 to 2018, Baker's creditors (including BANA) scheduled four foreclosure sales on the Property. Each time, a bankruptcy petition was filed on the eve of or mere days before the scheduled sale. Mark Schecklenburg petitioned for bankruptcy on two occasions, and Four Square

---

[2] "A Chapter 13 bankruptcy—sometimes called a 'wage earners plan'—enables a debtor with a regular income to repay all or part of his debts, typically over a three- to five-year period." *In re Cumbess*, 960 F.3d 1325, 1330 (11th Cir. 2020).

Foundation petitioned on one occasion.  Those petitions were all dismissed when the debtors failed to file necessary paperwork or attend hearings and meetings.

Relevant here, Baker filed a fifth bankruptcy petition on April 2, 2018—the day before a scheduled foreclosure sale.  The clerk of the bankruptcy court ordered Baker to correct numerous deficiencies in her filing.  When Baker did not cure the deficiencies, the bankruptcy court dismissed the case on May 21, 2018, with 180 days' prejudice.[3]

Although Baker's bankruptcy filing triggered an automatic stay on a scheduled foreclosure sale under 11 U.S.C. § 362(a), a foreclosure sale occurred as planned on April 3, 2018.  Najarian Capital, LLC was the successful bidder at the sale.

 Baker then sued BANA and Najarian Capital, LLC in federal court for violating the automatic stay.  Baker sought damages and asked the district court to hold the defendants in contempt of court.

In response to Baker's lawsuit, BANA returned to the bankruptcy court and moved to reopen Baker's bankruptcy case.  It requested *nunc pro tunc* relief from the automatic stay, prospective relief, and other related relief.  The bankruptcy

---

[3] Under the Bankruptcy Code, an individual is barred from petitioning for bankruptcy for 180 days if his previous "case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case[.]"  11 U.S.C. § 109(g).  The bankruptcy court identified numerous deficiencies in Baker's bankruptcy petition and ordered her to provide her Social Security number.  Baker never supplemented her bankruptcy petition.

court scheduled a hearing on the motion on January 15, 2019. Baker filed an

untimely response to the motion at 11:30 p.m. on the night before the hearing that

included a declaration from Baker.[4] In her response, she argued that: (1) BANA

did not properly move to reopen the case, (2) BANA was guilty of unclean hands,

(3) BANA should be estopped from reopening the case and seeking relief, and (4)

*nunc pro tunc* relief was unwarranted. Despite the untimeliness of Baker's

submission, the bankruptcy court permitted both parties to argue their respective

positions at the hearing.

At the conclusion of the hearing, the bankruptcy court orally explained why

it found cause to grant BANA's motion and requested relief. The bankruptcy court

then issued an order memorializing its decision. Baker moved to alter or amend

the bankruptcy court's order, but her motion was denied when she failed to appear

at a hearing on the motion.

Baker appealed to the district court, but the district court affirmed. This

appeal followed.

---

[4] The local rules provide that:

Memoranda, affidavits and other papers intended for consideration at any
hearing . . . shall be filed and served so as to be received by the movant and the
court not later than 4:30 p.m. on the second business day prior to the hearing, or
the papers submitted may not be considered at the hearing.

S.D. Fl. Bankr. L.R. 5005-1(F)(1).

## II.    Standard of Review

When reviewing a decision of the bankruptcy court, we "sit[] as a second court of review and . . . examine[] independently the factual and legal determinations of the bankruptcy court and employ[] the same standards of review as the district court." *In re Daughtrey*, 896 F.3d 1255, 1273 (11th Cir. 2018) (quotation omitted). We review the bankruptcy court's decision to lift an automatic stay for abuse of discretion. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989). "A bankruptcy court abuses its discretion when it either misapplies the law or bases its decision on factual findings that are clearly erroneous." *In re Daughtrey*, 896 F.3d at 1274. We review legal conclusions *de novo*. *In re Feingold*, 730 F.3d 1268, 1272 n.2 (11th Cir. 2013). "A factual finding is not clearly erroneous unless, after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake has been committed." *In re Daughtrey*, 896 F.3d at 1273 (citation and quotation marks omitted).[5]

---

[5] The district court applied plain error review because it determined that Baker forfeited her arguments before the bankruptcy court by (1) failing to file a timely response to BANA's motion to reopen, and (2) failing to appear at the hearing on Baker's first motion to alter or amend. On appeal, BANA adopts the district court's reasoning and submits that plain error review applies. We are not persuaded. At the hearing on the motion to reopen, the bankruptcy court admonished Baker's counsel for her untimely filing. Nevertheless, the bankruptcy court "permit[ted] [her] to make oral argument in response to [the] motion," while advising Baker's counsel not to "assume" that the court had read her untimely filing. The bankruptcy court's accompanying order again acknowledged Baker's untimely filing. But nothing in the hearing transcript or order suggests that the bankruptcy court based its decision on Baker's failure to file a timely response. To the contrary, it noted that it had "heard argument of counsel for BANA

We "may affirm for any reason supported by the record, even if not relied upon by the district court." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1009 (11th Cir. 2016) (quotation omitted).

### III.    Discussion

Baker raises several arguments challenging the bankruptcy court's order. None is persuasive.  We address each argument in turn.

### A.    BANA's standing to pursue relief in the bankruptcy court

Baker argues that BANA lacked standing to pursue relief before the bankruptcy court for two reasons.  First, she argues that BANA lacked constitutional standing because it did not have a pecuniary or other identifiable interest in the bankruptcy proceeding.  Second, she argues that BANA lacked "party in interest" standing under the United States Bankruptcy Code because it was not a secured creditor.  We disagree.[6]

First, we consider constitutional standing.  The subject-matter jurisdiction of federal courts is limited to "Cases" and "Controversies."  U.S. Const. art. III, § 2.

---

and for the Debtor" and was granting BANA's motion "for the reasons stated on the record" at the hearing.  Accordingly, we decline to find forfeiture.

[6] Baker submits that we should remand the case to the bankruptcy court to determine the issue of standing in the first instance.  We decline to do so because we "review the legal question of standing *de novo*[,]" *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1351 (11th Cir. 2005), and the record contains enough evidence to decide the question.

Relatedly, Baker also maintains that the district court should have remanded the case when it found that BANA was a servicer rather than a creditor.  The distinction is irrelevant because, as we will explain, both a servicer and a creditor have party in interest standing.

"To have a case or controversy, a litigant must establish that he has standing[.]"
*United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019).  And to establish
standing, a "litigant must prove (1) an injury in fact that (2) is fairly traceable to
the challenged action of the defendant and (3) is likely to be redressed by a
favorable decision."  *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th
Cir. 2020).  BANA suffered an injury because Baker defaulted on the loan that
BANA services and because Baker sued BANA in federal court for sanctions and
to hold BANA in contempt of court for violating the automatic stay.  Both injuries
are directly traceable to Baker.  And the bankruptcy court's order granting relief to
BANA is likely to redress BANA's injury.  BANA will benefit from the proceeds
of the foreclosure sale, and BANA can rely on the bankruptcy court's order as a
defense against Baker's lawsuit.  Therefore, BANA had Article III standing in the
bankruptcy court.

Next, we address party in interest standing.  When an individual files a
voluntary bankruptcy petition under 11 U.S.C. § 301, that petition triggers an
automatic stay that protects a debtor "against actions to enforce, collect, assess or
recover claims against the debtor or against property of the estate."  *United States
v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) (citing 11 U.S.C. § 362(a)).  But
"[o]n request of a *party in interest* and after notice and a hearing, the [bankruptcy]
court shall grant relief from the [automatic] stay . . . , such as by terminating,

annulling, modifying, or conditioning such stay" under certain circumstances. 11

U.S.C. § 362(d) (emphasis added). Relevant here, the bankruptcy court shall grant

relief from "a stay of an act against real property . . . by a *creditor* whose claim is

secured by an interest in such real property, if the court finds that the filing of the

petition was part of a scheme to delay, hinder, or defraud creditors" involving

either: (1) the "transfer of all or part ownership of, or other interest in, such real

property without the consent of the secured creditor or court approval[,]" or (2)

"multiple bankruptcy filings affecting such real property." *Id.* § 362(d)(4)

(emphasis added).

A loan "servicer is a party in interest in [Chapter 13] proceedings involving

loans which it services." *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002).

A "creditor" is an "entity that has a claim against the debtor." 11 U.S.C.

§ 101(10). And a "claim" is a "right to payment" or a "right to an equitable

remedy for breach of performance if such breach gives rise to a right to

payment[.]" 11 U.S.C. § 101(5)(A)–(B).

In its motion to reopen, BANA identified itself as a secured creditor for, and

the servicer of, Baker's loan. It supported its motion to reopen with default and

foreclosure notices it sent to Baker over the years. Those notices identified BANA

as acting on behalf of the creditor—Bank of New York Mellon—and servicing the

loan.[7]  Thus, BANA had standing under the plain language of § 362(d) to move to reopen given its status as creditor and servicer.

Although Baker raises a variety of subsidiary points, Baker essentially argues that BANA lacks standing because it has no contractual rights under the security deed or promissory note and no legal interest in the property.  However, Baker misses the critical point that BANA had a legal interest in the property as the representative of the secured creditor and the servicer of the loan.  Indeed, Baker acknowledged the fact—in the bankruptcy court and in her complaint for sanctions—that BANA is the servicer of the loan and that she failed to make loan payments to BANA.  BANA's status as a representative of the secured creditor and as the loan servicer is all that is required to establish its standing to seek relief in the bankruptcy court.[8]

B.      The bankruptcy court's statutory authority to reopen the case

Next, Baker argues that BANA improperly moved to reopen her bankruptcy case under 11 U.S.C. § 350(b).  She contends that a case can be reopened under

---

[7] In addition to having standing by virtue of its acting on behalf of the Bank of New York Mellon, BANA also had standing as a "creditor" because it had a "claim" against Baker (in the form of a "right to payment").  *See* 11 U.S.C. § 101(5)(A), (10); *see also In re Hayden*, No. 13-57281, 2013 WL 3776296, at *2 (Bankr. N.D. Ga. June 25, 2013) ("It is recognized that a servicer of a mortgage is clearly a creditor and has standing to file a proof of claim or assert a claim against a debtor pursuant to its duties as a servicer.").

[8] After carefully considering Baker's related standing arguments, we find them meritless.  For example, Baker argues that BANA was not a creditor because it lacked authority under Georgia law to conduct the foreclosure sale.  As noted above, however, BANA has standing for other reasons.

§ 350(b) only after a case has been closed under § 350(a).  And she maintains that her bankruptcy case was dismissed and not closed.  We conclude that the bankruptcy court had statutory authority to reopen her case.

A bankruptcy court "shall close [a] case" after "an estate is fully administered and the court has discharged the trustee[.]"  11 U.S.C. § 350(a).  A case may also "be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  *Id.* § 350(b).  Either "the debtor" or another "party in interest" may move to reopen a case under § 350(b).  Fed. R. Bankr. P. 5010.

Neither the Bankruptcy Code nor the Bankruptcy Rules define when an estate is "fully administered."  Nevertheless, when "the trustee has filed a final report and final account and has certified that the estate has been fully administered," and there is no objection, "there shall be a presumption that the estate has been fully administered."  Fed. R. Bankr. P. 5009(a).

The "bankruptcy court retains broad discretion [under § 350(b)] to reopen a closed case on a motion of the debtor or another party in interest."  *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1186 (11th Cir. 2017) (en banc).  Thus, we are deferential to the decision of the bankruptcy court.  *See In re Haker*, 411 F.2d 568, 569 (5th Cir. 1969) ("It is elemental bankruptcy law that the granting of a petition to reopen is a matter addressed to the sound discretion of the Court, and the only

reason for setting aside the judgment of the trial court is for an abuse of that discretion.").

Baker's Chapter 13 bankruptcy petition was dismissed with 180 days' prejudice for failing to file necessary paperwork. Baker moved to reinstate her petition, but the bankruptcy court denied that motion. The Chapter 13 trustee then filed the final report and account. The bankruptcy court discharged the trustee and ordered the case to be closed. Thus, the bankruptcy court fulfilled the plain terms of § 350(a).

Because Baker sued BANA for violating the automatic stay, BANA later moved to reopen the case under § 350(b). It sought relief from the automatic stay under 11 U.S.C. § 362(d)(4), citing Baker's "scheme to stall, hinder, delay[,] and defraud the Bank's efforts to enforce its creditor's rights with respect to the . . . Property." Because the bankruptcy court eventually closed the case, BANA could—and did—move to reopen under § 350(b), and the bankruptcy court acted within its broad discretion in granting BANA's motion.[9]

---

[9] Baker also argues that BANA moved for relief using the wrong procedural mechanism. She contends that her bankruptcy case was dismissed and not closed and, thus, BANA should have filed a Rule 60 motion rather than moving under § 350(b). *See* Fed. R. Bankr. P. 9024 (applying Fed. R. Civ. P. 60 to motions seeking relief from a judgment or order). It is true that the bankruptcy court initially dismissed her case with 180 days' prejudice. But Baker's argument fails because the bankruptcy court later issued an order closing Baker's case, and she concedes that § 350(b) is the proper mechanism for reopening a closed case. Moreover, even if we were to ignore the bankruptcy court's order closing the case, Baker does not attempt to rebut the presumption that her case was fully administered (and therefore closed) when the trustee filed

C.      Baker's demand for an evidentiary hearing

Next, Baker argues that the bankruptcy court should have held an evidentiary hearing before granting BANA's motion to reopen because the declaration attached to her opposition to BANA's motion raised disputed issues of material fact concerning BANA's entitlement to relief from the automatic stay. Specifically, she maintains that she raised disputed issues of material fact concerning whether: (1) she knew about several of the deed transfers and bankruptcy filings; (2) BANA knew that an automatic stay was in place (and when it knew); (3) BANA's legal counsel told Baker that if she could verify that she filed the fifth bankruptcy petition, the foreclosure sale would have to be rescinded; (4) BANA delayed in seeking relief from the automatic stay; and (5) Baker ceased to prosecute the fifth bankruptcy case because BANA offered a loan modification. We find Baker's argument unavailing because she delayed in seeking an evidentiary hearing until after the bankruptcy court granted BANA's motion to reopen.

As explained, the bankruptcy court "shall grant relief from the [automatic] stay" on "request of a party in interest and *after notice and a hearing*," if "the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud

---

its report and account and the bankruptcy court discharged the trustee. *See* Fed. R. Bankr. P. 5009(a).

creditors." 11 U.S.C. § 362(d) (emphasis added). "[A]fter notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances[.]" *Id.* § 102(1).

Courts have long recognized that this standard is flexible and the hearing need not be evidentiary in nature. *See, e.g.*, *In re Eliapo*, 468 F.3d 592, 603 (9th Cir. 2006) (noting that "the notice-and-hearing definition in § 102(1) is flexible and sensitive to context"); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 727 (5th Cir. 1991) (holding that when "a matter has already been adequately argued before the bankruptcy judge, and the judge determines that no further hearings are necessary, then the debtor's due process rights are not violated when the judge decides the issue without further hearings"); *In re Spillane*, 884 F.2d 642, 646 (1st Cir. 1989) (holding that a hearing without cross examination was appropriate under § 102(1) because the district court questioned the parties and permitted them to present argument); *Pursifull v. Eakin*, 814 F.2d 1501, 1505–06 (10th Cir. 1987) (holding that a hearing satisfied the requirements of § 362 because a debtor "had the opportunity at [the] hearing to argue against the lifting of the [automatic] stay"); *In re Boomgarden*, 780 F.2d 657, 662 (7th Cir. 1985) (holding that two non-evidentiary hearings satisfied § 102(1) because they "covered all of the important substantive provisions of § 362(d)").

At the same time, a "motion for relief from an automatic stay provided by the Code . . . shall be made in accordance with Rule 9014." Fed. R. Bankr. P. 4001(a)(1).  Rule 9014 provides that "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a).  The rule further provides that "[t]estimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding." Fed. R. Bankr. P. 9014(d).  But as the committee notes explain, subsection (d) was "added to clarify that *if* the motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held at which testimony of witnesses is taken." *Id.* (emphasis added).

After BANA filed its motion to reopen, the bankruptcy court scheduled a non-evidentiary hearing.  Under that court's local rules, the non-evidentiary hearing "shall be restricted to the pleadings, affidavits and papers of record and to the arguments of attorneys." S.D. Fl. Bankr. L.R. 4001-1(E).  The local rules also provide that any "[m]emoranda, affidavits and other papers intended for consideration at any hearing already set before the court" "shall be filed and served . . . not later than 4:30 p.m. on the second business day prior to the hearing, or the papers submitted *may not be considered* at the hearing." S.D. Fl. Bankr. L.R. 5005-1(F)(1) (emphasis added).  However, an untimely submission from a party

15

may be considered by the bankruptcy court if the untimely filing is accompanied a late filing notice that notes "the emergency nature of the filing or stat[es] the exceptional circumstances for the untimely filing."  S.D. Fl. Bankr. L.R. 5005-1(F)(2).

Baker received notice and a hearing.  The question we must decide is whether the non-evidentiary hearing was appropriate in the particular circumstances of this case given the requirements of Rule 9014 and the bankruptcy court's local rules.

Baker argues that because she opposed the requested relief from the automatic stay and highlighted disputed material issues of fact at the non-evidentiary hearing, the bankruptcy court was required to hold an evidentiary hearing to resolve those disputed facts under Rule 9014.

Baker's argument is unpersuasive.  Baker did not request an evidentiary hearing until after the bankruptcy court granted BANA's motion to reopen.  We generally "turn a deaf ear to protests that an evidentiary hearing should have been convened but was not" when "the protestor did not seasonably request such a hearing in lower court."  *Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1250 (11th Cir. 2005) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 (1st Cir. 1989)).  Like the plaintiffs in *Sunseri*, Baker was "on notice that the [bankruptcy] court" scheduled a non-evidentiary hearing and "would decide [BANA's] motion

based only on the written submissions." *Id.* Yet she did not request an evidentiary hearing either in her untimely opposition to BANA's motion or at the non-evidentiary hearing. That omission is puzzling considering that Baker's counsel referenced Baker's declaration at the hearing and the bankruptcy court stated its findings on the record and indicated that it would grant the motion to reopen. Although Baker requested an evidentiary hearing in her motion to alter or amend the bankruptcy court's order granting BANA's motion to reopen, Baker does not explain why the need for an evidentiary hearing became apparent *after* the bankruptcy court's order. Even then, Baker and her counsel failed to attend the hearing on Baker's motion to alter or amend the bankruptcy court's order. Baker's lack of diligence does not entitle her to an evidentiary hearing.

Accordingly, the bankruptcy court did not abuse its discretion in conducting a non-evidentiary hearing.

D.    The bankruptcy court's finding that *nunc pro tunc* and prospective relief from the automatic stay was warranted

Finally, Baker contends that the bankruptcy court did not conduct the proper analysis before granting BANA *nunc pro tunc* and prospective relief from the automatic stay under 11 U.S.C. § 362(d). We disagree.

BANA moved for relief under § 362(d)(4). As we noted, under § 362(d)(4), the relevant question is whether the bankruptcy court "finds that the filing of [a bankruptcy] petition was part of a scheme to delay, hinder, or defraud creditors"

that involved either the transfer of ownership of the real property "without the consent of the secured creditor or court approval" or "multiple bankruptcy filings affecting such real property."

Short of identifying the factual history of the case as a "scheme," the bankruptcy court made every factual finding necessary to support relief under § 362(d)(4). The bankruptcy court cited § 362(d)(4). The bankruptcy court found that the case "appears to be an extremely egregious situation" given the "multiple bankruptcy filings by multiple debtors, none of which appear to have been filed in good faith, and all of which were dismissed by various bankruptcy courts based upon the . . . debtors' collective failures to comply with the Bankruptcy Code and the Bankruptcy Rules[.]" In addition, it found that "[t]his situation really cries out for stay relief, as well as the prospective two-year stay relief under [§] 362(d)(4)." The bankruptcy court continued:

> [T]he Court finds that there is cause for stay relief to be granted on a nunc pro tunc basis, given that there has been a failure for over ten years by this debtor to make payments on account of this mortgage loan; that the allegations indicate that there have been multiple bankruptcy filings by various entities and individuals, including [this case].
>
> . . .
>
> The Court further finds that in light of the successive bankruptcies, the delay in the ability of Bank of America to proceed with a foreclosure sale of this property because of bankruptcy filings by Mr. Shecklenburg, the Foundation, and then most recently by this debtor,

it is appropriate to grant a two-year prospective stay relief with respect to this property in accordance with Section 362(d)(4).

In short, the bankruptcy court found that multiple bankruptcy filings were part of a scheme to delay Baker's creditors from foreclosing on the property and, therefore, *nunc pro tunc* and prospective relief was warranted under § 362(d)(4).

Baker argues that to grant BANA relief under § 362(d)(1), the bankruptcy court had to find "cause." Baker notes that we look to several factors in considering whether "cause" exists, including: (1) "whether the debtor has acted in bad faith," (2) "the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code," and (3) "pending state court proceedings[.]" *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013) (citation and quotation marks omitted). And Baker asserts that the bankruptcy court failed to make such a finding—either at the hearing or in its order granting BANA's motion—because it did not "cite to a case or state the legal standard" governing motions brought under § 362(d)(1).[10]

Baker's argument is unavailing. As an initial matter, BANA moved for relief from the automatic stay under § 362(d)(4) and *not* § 362(d)(1). So the requirements of § 362(d)(1) are irrelevant. In addition, as we have noted from the

---

[10] Baker also rehashes her argument that there are disputed issues of material fact because her declaration "refutes" BANA's factual allegations and the bankruptcy court's factual findings. We have already rejected that argument.

hearing transcript, the bankruptcy court adequately explained that it found "cause" to grant BANA's request for *nunc pro tunc* and prospective relief from the automatic stay.[11]

The bankruptcy court's analysis satisfied the requirements of § 362(d)(4). Therefore, the bankruptcy court did not abuse its discretion by awarding BANA *nunc pro tunc* and prospective relief from the automatic stay.

### IV.    Conclusion

For the reasons explained, we affirm.

**AFFIRMED.**

---

[11] To the extent that Baker argues that the bankruptcy court was required to cite § 362(d)(4) and restate its factual findings in the written order granting BANA's motion to reopen, we reject that argument.  Baker does not provide any legal authority—and we are unaware of any—that requires the bankruptcy court to restate the rationale it orally provided at the hearing in its written order.  It is sufficient that the bankruptcy court's order incorporated "the reasons stated on the record" at the hearing.

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 29, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  20-10780-AA
Case Style:  Tabitha Baker v. Bank of America, N.A.
District Court Docket No:  9:19-cv-80782-RLR
Secondary Case Number:  9:18-bk-16061-MAM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call T. L. Searcy, AA at (404) 335-6180.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs